UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

MICHAEL KEHOE,
MOHAMAD NAWAFLEH,
OMAR ALRAWASHDEH,
GAMAL OBAID,
EMAD ALRAWASHDEH, and
ARLASA DAVIS,

Defendants.

**SEALED SUPERSEDING INDICTMENT**

S1 25 Cr. 178 (JSR)

**COUNT ONE**
**(Conspiracy to Steal Government Funds and Misappropriate USDA Benefits)**

The Grand Jury charges:

**Overview**

1.     Each year, the United States Government, through the United States Department of Agriculture (the "USDA"), provides billions of dollars in benefits to over twenty million households in the form of the Supplemental Nutrition Assistance Program ("SNAP"). The purpose of SNAP is to help low-income families across the United States buy groceries. As part of SNAP, the USDA authorizes over 250,000 retailers to accept and redeem SNAP benefits, ranging from local bodegas to large supermarket chains.

2.     Beginning in 2019, MICHAEL KEHOE, MOHAMAD NAWAFLEH, OMAR ALRAWASHDEH, GAMAL OBAID, EMAD ALRAWASHDEH, and ARLASA DAVIS, the defendants, facilitated the provision of electronic payment terminals, known as Electronic Benefit Transfer ("EBT") terminals, to hundreds of retail stores that were not authorized to accept SNAP benefits.  An EBT terminal is an electronic device that allows retailers to process electronic

transactions, including those involving SNAP benefits, similar to a credit card processing machine. In facilitating the provision of unauthorized EBT terminals, the defendants facilitated retail stores' unauthorized acceptance and redemption of over $30 million in SNAP benefits.

3.     Some of the defendants personally owned or controlled some of the retail stores for which they facilitated the provision of the EBT terminals.  As a result, those defendants received a portion of the unauthorized SNAP benefits those stores redeemed.  In exchange for facilitating the provision of EBT terminals to retail stores that were not owned or controlled by any of the defendants, the defendants extracted commissions, cash payments, and other fees from those stores.

4.     MICHAEL KEHOE, the defendant, is the founder and president of a Long Island-based merchant services provider ("Company-1"), a credit card and payment processing company that, among other services, acts as an intermediary for retail stores that want to receive and process SNAP benefits via EBT terminals.  KEHOE, along with MOHAMAD NAWAFLEH, OMAR ALRAWASHDEH, GAMAL OBAID, and EMAD ALRAWASHDEH, the defendants, supplied approximately 160 unauthorized EBT terminals to retail stores throughout the United States, including in Manhattan and the Bronx, that were not authorized to accept SNAP benefits, thereby facilitating those retailers' unauthorized acceptance and redemption of millions of dollars in SNAP benefits.

5.     To obtain unauthorized terminals for these stores, which sought to participate in the lucrative SNAP program, KEHOE submitted fraudulent electronic applications that contained license numbers, known as Food and Nutrition Service numbers ("FNS numbers"), associated with retail stores that had permission to redeem SNAP benefits, as well as, on at least one occasion, a fraudulent government license number created by OMAR ALRAWASHDEH, the defendant.

2

6.     To maintain the scheme, the defendants needed FNS numbers, which are unique numbers that are generated and provided only by the USDA through authorized channels. Among other sources of unauthorized FNS numbers, MICHAEL KEHOE, MOHAMAD NAWAFLEH, OMAR ALRAWASHDEH, GAMAL OBAID, and EMAD ALRAWASHDEH, the defendants, relied both on ARLASA DAVIS, the defendant, who was a longtime USDA employee, as well as on an intermediary unaffiliated with the USDA with whom DAVIS worked (the "FNS Broker"). From at least in or about 2022 through at least in or about March 2025, DAVIS received cash bribes from the FNS Broker in exchange for DAVIS abusing her privileged access to USDA databases to misappropriate hundreds of FNS numbers. The FNS Broker then sold those misappropriated FNS numbers to store owners and others, including NAWAFLEH, OMAR ALRAWASHDEH, OBAID, and EMAD ALRAWASHDEH. The misappropriated FNS numbers DAVIS provided to the FNS Broker enabled the defendants to obtain additional unauthorized EBT terminals for themselves, their retail stores, and others.

## The Federal Supplemental Nutrition Assistance Program

7.     The Food Stamp Act of 1977, as amended, 7 U.S.C. § 2011 *et seq.*, established the Food Stamp Program, which is now known as SNAP. SNAP is overseen by the USDA's FNS. SNAP benefits are obligations of the Federal Government and are redeemable at face value through the United States Treasury.

8.     SNAP uses federal tax dollars to subsidize low-income households' access to food. Under the program, eligible households receive SNAP benefits in the form of credits to EBT cards, which are plastic debit cards which can be used to buy food from retail food stores that participate in SNAP. Recipients of SNAP assistance can redeem their program benefits by using an EBT card to purchase eligible food items at authorized retailers.

3

9.      The transfer of benefits is initiated when the recipient's card is swiped through an EBT terminal at an authorized retailer. The recipient is then prompted to enter a personal identification number ("PIN") to access his or her SNAP account. The SNAP system then verifies the PIN and either authorizes or denies the transaction, depending on the balance in the recipient's account. If the transaction is approved, the recipient's account is debited for the amount of the purchase, and a bank account that the retailer has designated is credited for that amount.

10.     SNAP benefits may be accepted only by retailers authorized by the Federal Government. To participate in SNAP, the owner or operator of a retail food store must first apply for authorization. If the USDA approves the retailer's application, then the retailer is permitted to accept EBT cards from eligible SNAP recipients in exchange for the purchase of eligible food items. Once FNS authorizes a retailer to accept SNAP benefits, FNS issues the retailer a SNAP permit and a unique FNS number. USDA uses the FNS number to identify the retailer and to track redemptions. A retailer that does not possess a permit and accompanying FNS number may not accept or redeem SNAP benefits.

**MICHAEL KEHOE and MOHAMAD NAWAFLEH Obtained Hundreds of Unauthorized EBT Terminals for Dozens of Unlicensed Stores Across the New York City Area**

11.     The vast majority of the retail stores for which MICHAEL KEHOE, the defendant, obtained terminals did not have an authorized FNS number to process EBT benefits, including SNAP benefits, and therefore were ineligible to operate an EBT terminal.

12.     In or about June 2019, MICHAEL KEHOE, the defendant, entered into a contract with a third-party payment processing company based in California ("Processing Company-1"). Processing Company-1 is a distributor of EBT terminals, as well as other point-of-sale equipment and software. Processing Company-1 charges a fee for each EBT transaction conducted on one of its EBT terminals. Since in or about June 2019, KEHOE's company, Company-1, has submitted

approximately 200 applications to Processing Company-1 for EBT terminals for retail stores in the New York area, including in Manhattan, Brooklyn, Queens, the Bronx, and Yonkers. At least 160 of those approximately 200 EBT terminals obtained by KEHOE and his coconspirators were unauthorized terminals operating on unauthorized FNS numbers.

13.     From in or about February 2022 through in or about July 2024, MOHAMAD NAWAFLEH, the defendant, was employed as a sales agent for Company-1, and, in that role, acted as the sales agent for at least fifty of the unauthorized EBT terminals obtained by MICHAEL KEHOE, the defendant. As with KEHOE's other sales agents, NAWAFLEH's role was to find retail customers for KEHOE, collect their information, and provide that information to KEHOE, so that KEHOE could obtain terminals for those stores. In addition to finding retail stores that sought to process and redeem SNAP benefits, NAWAFLEH also charged retail stores cash in order to submit applications on their behalf.

14.     For example, in or about September 2023, MOHAMAD NAWAFLEH, the defendant, agreed to sell an unauthorized terminal to a smoke shop in the Bronx ("Store-1") in exchange for approximately $17,000 in cash, even though Store-1 was not authorized to receive an EBT terminal and did not sell items that were eligible to be purchased through SNAP. On or about September 11, 2023, NAWAFLEH texted MICHAEL KEHOE, the defendant, information for Store-1, including the Social Security number of Store-1's owner, a tax ID number for Store-1, an email address, and a voided check. After confirming with NAWAFLEH via text message that Store-1 was, in fact, a "real store" because KEHOE could not find it online, KEHOE then submitted an online application to Processing Company-1 for an EBT terminal for the store. The application included the information NAWAFLEH provided to KEHOE, as well as an FNS number ending in 3569 (the "3569 FNS number") that NAWAFLEH had not provided to KEHOE.

5

15.     Neither Store-1 nor MOHAMAD NAWAFLEH, the defendant, provided MICHAEL KEHOE, the defendant, with the 3569 FNS number that KEHOE used when applying for the EBT terminal. Instead, the 3569 FNS number that KEHOE used was one of dozens of FNS numbers licensed to other retail stores that KEHOE reused throughout the course of the scheme to open terminals on behalf of stores that did not have FNS numbers. Specifically, during a three-month period between in or about June and September 2023, KEHOE used the 3569 FNS number to submit to Processing Company-1 fraudulent EBT terminal applications for eight retail stores, including Store-1. KEHOE maintained a record of his fraudulent use of FNS numbers in a file saved on his cellphone. That file suggests that KEHOE attempted to use the 3569 FNS number more than sixty times.

## MICHAEL KEHOE and MOHAMAD NAWAFLEH Took Steps to Unlawfully Obtain Additional FNS Numbers

16.     MICHAEL KEHOE and MOHAMAD NAWAFLEH, the defendants, discussed their efforts to find additional FNS numbers for their retail store customers, often using the code word "fish" for FNS numbers. For example, in or about early January 2024, KEHOE asked NAWAFLEH, "Do you have any other stores that we should do?" NAWAFLEH responded, "I have but I don't have fish number." KEHOE responded, "Can we make them pay for it? I can send them a bill/invoice. Also, did you speak to the stores and let them know that they are not doing enough credit and debit. It looks very bad. . . . If we want to make a good commission, we need them to do everything on our Terminal. Right?" The reference to "not doing enough credit and debit," related to the retail stores' use of multiple payment terminals, which can trigger fraud detection activity by payment processors due to the low number of credit and debit card transactions on any given terminal processing SNAP benefits, which is inconsistent with legitimate

6

store activity, where there would typically be a similar volume of both EBT and non-EBT credits and debits on the same terminal.

17.     As another example of MICHAEL KEHOE and MOHAMAD NAWAFLEH, the defendants', text communications about obtaining FNS numbers to use for the scheme, later in or about January 2024, KEHOE texted NAWAFLEH, "Brother, I just caught three more fish. Are you going to send more stores?"

### OMAR ALRAWASHDEH Unlawfully Facilitated the Provision of EBT Terminals to Unauthorized Stores and Fabricated FNS Permits

18.     MICHAEL KEHOE and MOHAMAD NAWAFLEH, the defendants, took steps to obtain additional FNS numbers from others, including OMAR ALRAWASHDEH and EMAD ALRAWASHDEH, the defendants. For example, in or about November 2023, NAWAFLEH sent KEHOE information for a potential retail store customer, and when NAWAFLEH informed KEHOE, in substance and in part, that NAWAFLEH did not have an FNS number to use for that store, KEHOE responded, in part, "Try to get it from Omar or Emad. I think they have," referring to OMAR ALRAWASHDEH and EMAD ALRAWASHDEH, the defendants. OMAR ALRAWASHDEH and his cousin, EMAD ALRAWASHDEH, own approximately twenty deli and retail stores in Manhattan and the Bronx.

19.     From in or about August 2023 through in or about July 2024, OMAR ALRAWASHDEH, the defendant—like MOHAMAD NAWAFLEH, the defendant—in addition to obtaining unauthorized EBT terminals for himself and other retail store owners, also acted as a sales agent for MICHAEL KEHOE, the defendant, and for Company-1. OMAR aided KEHOE and others in obtaining unauthorized EBT terminals for at least thirty retail stores. For example, in or about September 2023, OMAR provided KEHOE with information about a particular retail store ("Store-2"), including that Store-2 did not have bank records because OMAR had, without

7

authorization, provided one of his own EBT terminals to Store-2 to temporarily use until a new terminal could be obtained. Despite having been told that Store-2 was not licensed to redeem SNAP benefits, KEHOE submitted an application to Processing Company-1 for an EBT terminal for Store-2, listing an FNS number that KEHOE knew belonged to another store.

20.     In addition, OMAR ALRAWASHDEH, the defendant, sent MICHAEL KEHOE, the defendant, fake FNS permits. For example, in or about November 2023, KEHOE texted OMAR and asked, "Can you prepare Fish license? We need the fish license for the new stores." OMAR and KEHOE then exchanged a number of text messages that were subsequently deleted, after which OMAR asked if KEHOE could "amend" the license for a new store ("Store-3"), which KEHOE refused to do. Shortly thereafter, OMAR sent KEHOE a fraudulently modified FNS permit that replaced accurate information on the permit with fraudulent store information, such as a new FNS number. KEHOE ultimately submitted an application to Processing Company-1 for an EBT terminal for Store-3 using the FNS number identified in the fraudulent permit prepared by OMAR.

## GAMAL OBAID and EMAD ALRAWASHDEH Facilitated the Provision of EBT Terminals to Unauthorized Stores

21.     MICHAEL KEHOE, the defendant, also worked with GAMAL OBAID, the defendant, and OBAID's business partner, EMAD ALRAWASHDEH, the defendant, to find additional stores that sought unauthorized EBT terminals. In addition to obtaining unauthorized payment terminals for their own stores, OBAID and EMAD also brought other unlicensed retail stores to KEHOE as potential customers.

22.     For example, on or about March 9, 2022, MICHAEL KEHOE, the defendant, submitted an application for an EBT terminal for a bodega in the Bronx, New York, which is owned by EMAD ALRAWASHDEH, the defendant, and which did not possess a valid FNS permit

8

and was therefore ineligible to accept or redeem SNAP benefits ("Store-4"). KEHOE listed on the application a misappropriated FNS number that KEHOE and others had used on prior fraudulent applications. Within weeks, the terminal was approved, shipped, and installed.

23.     As an additional example, on or about June 10, 2024, in response to a request for a terminal for another unlicensed retail store, MICHAEL KEHOE, the defendant, wrote to GAMAL OBAID, the defendant, among other things: "Emad sent me a store. He is using the same fish number as the store that you gave to me. We cannot use it."

24.     In addition to providing stores to MICHAEL KEHOE, the defendant, that needed EBT terminals, GAMAL OBAID and EMAD ALRAWASHDEH, the defendants, also provided KEHOE with additional misappropriated FNS numbers in connection with the scheme. FNS numbers provided by OBAID and EMAD had frequently been deactivated or were not authorized for use by OBAID and EMAD's stores. Nevertheless, EMAD and OBAID continued to provide those numbers to KEHOE, and the defendants continued to use those numbers in connection with applications for dozens of unrelated stores. These stores used the misappropriated FNS numbers to redeem SNAP benefits despite having no authorization to do so. The majority of these transactions were routed through terminals provided by KEHOE's company, Company-1. For example, on or about August 31, 2023, EMAD texted KEHOE a particular FNS number that USDA analysis revealed was used at dozens of unauthorized stores throughout New York City.

**ARLASA DAVIS, a USDA Employee, Provided Misappropriated FNS Numbers for Bribes**

25.     From at least in or about 2022 through at least in or about April 2025, MOHAMAD NAWAFLEH, GAMAL OBAID, and EMAD ALRAWASHDEH, the defendants, purchased FNS numbers from a third-party intermediary (*i.e.*, the FNS Broker), who in turn obtained those FNS

9

numbers by bribing ARLASA DAVIS, the defendant, who used her access and role as a USDA employee to misappropriate the FNS numbers from sensitive USDA databases.

26.    Specifically, ARLASA DAVIS, the defendant, copied FNS numbers from internal government databases and provided those numbers to the FNS Broker.  DAVIS, who had no legitimate employment-related reason to document, copy, or share these FNS numbers with unauthorized individuals, repeatedly and deliberately misappropriated this confidential government information.  At times, DAVIS would use her personal cellphone to copy, photograph, and organize hundreds of misappropriated FNS numbers, including by photographing handwritten lists of misappropriated FNS numbers, which DAVIS provided to the FNS Broker in exchange for payment.

27.    The FNS Broker then sold those misappropriated FNS numbers to buyers throughout the New York area, including MOHAMAD NAWAFLEH, OMAR ALRAWASHDEH, GAMAL OBAID, and EMAD ALRAWASHDEH, the defendants, who used the misappropriated FNS numbers to process millions of dollars in SNAP benefits at unauthorized retail locations.

28.    ARLASA DAVIS, the defendant, maintained regular communication with the FNS Broker regarding the supply and replacement of misappropriated FNS numbers.  When issues arose with particular FNS numbers—such as when the USDA detected that an FNS number had been misappropriated and deactivated that FNS number—DAVIS would quickly provide replacement FNS numbers to the FNS Broker, promoting continuation of the scheme described above.  DAVIS also proactively monitored the FNS Broker's use of the misappropriated FNS numbers, often asking the FNS Broker to confirm, among other things, whether certain FNS numbers had been used by stores, and checking that FNS numbers were not deactivated.

10

29.     In exchange for misappropriating the FNS numbers, which were ultimately used by unauthorized stores, ARLASA DAVIS, the defendant, received substantial payments from the FNS Broker, who in turn received payments from MOHAMAD NAWAFLEH, OMAR ALRAWASHDEH, GAMAL OBAID, and EMAD ALRAWASHDEH, the defendants, and others. The FNS Broker maintained detailed records of the payments made to DAVIS, submitting deposit slips with DAVIS's name, account number, and the payment amount to a bank located in Manhattan, which are also reflected in DAVIS's bank account records. To mask that these payments were bribes, written communications between DAVIS and the FNS Broker described the payments as birthday gifts, flowers, or other routine transactions.

30.     In total, during the relevant period, ARLASA DAVIS, the defendant, supplied the FNS Broker with hundreds of FNS numbers that DAVIS misappropriated from the USDA. Those compromised FNS numbers—many of which the FNS Broker went on to sell to MOHAMAD NAWAFLEH, OMAR ALRAWASHDEH, GAMAL OBAID, and EMAD ALRAWASHDEH, the defendants—resulted in approximately $36 million in unauthorized EBT transactions across multiple retail stores and merchants throughout the United States.

### MOHAMAD NAWAFLEH Fled the Country After Being Charged

31.     On or about July 19, 2024, MOHAMAD NAWAFLEH, the defendant, was arrested in the Southern District of New York and released on a $75,000 bond which required, among other conditions, that NAWAFLEH comply with pretrial supervision and monitoring, including electronic monitoring, and that NAWAFLEH remain within the Southern and Eastern Districts of New York.

32.     In or about February 2025, NAWAFLEH disabled his court-ordered electronic monitoring device, failed to report to the Pretrial Services Office as required, and fled to Jordan.

33.    On or about May 7, 2025, the Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, ordered NAWAFLEH to appear for a conference on or about May 14, 2025.  Despite being informed of this obligation by his attorney, NAWAFLEH failed to appear as ordered on or about May 14, 2025, and remains a fugitive.

## Statutory Allegations

34.    From at least in or about June 2019 through at least in or about April 2025, in the Southern District of New York and elsewhere, MICHAEL KEHOE, MOHAMAD NAWAFLEH, OMAR ALRAWASHDEH, GAMAL OBAID, EMAD ALRAWASHDEH, and ARLASA DAVIS, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, theft of government funds, in violation of Title 18, United States Code, Section 641, and misappropriation of USDA benefits, in violation of Title 7, United States Code, Section 2024(b).

35.    It was a part and an object of the conspiracy that MICHAEL KEHOE, MOHAMAD NAWAFLEH, OMAR ALRAWASHDEH, GAMAL OBAID, EMAD ALRAWASHDEH, and ARLASA DAVIS, the defendants, and others known and unknown, would and did embezzle, steal, purloin, and knowingly convert to their use and the use of another, and without authority sell, convey, and dispose of a record, voucher, money, and thing of value of the United States and a department and agency thereof, to wit, the USDA, which exceeded the sum of $1,000, and receive, conceal, and retain the same with intent to convert it to their use and gain, knowing it to have been embezzled, stolen, purloined, and converted, in violation of Title 18, United States Code, Section 641.

36.     It was further a part and an object of the conspiracy that MICHAEL KEHOE,
MOHAMAD NAWAFLEH, OMAR ALRAWASHDEH, GAMAL OBAID, EMAD
ALRAWASHDEH, and ARLASA DAVIS, the defendants, and others known and unknown,
knowingly would and did use, transfer, acquire, alter, and possess benefits in a manner contrary to
Chapter 51 of Title 7 of the United States Code, and the regulations issued pursuant thereto, which
benefits were of a value of $5,000 and more, in violation of Title 7, United States Code, Section
2024(b).

## Overt Acts

37.     In furtherance of the conspiracy, and to effect the illegal objects thereof, the
following overt acts, among others, were committed in the Southern District of New York and
elsewhere:

a.     In or about September 2023, MOHAMAD NAWAFLEH, the defendant,
knowingly sold an EBT terminal to a retail store located in the Bronx, New York, that was not
authorized to accept SNAP benefits, for approximately $17,000 in cash.

b.     In or about September 2023, MICHAEL KEHOE, the defendant, knowingly
submitted a fraudulent application for an EBT terminal on behalf of a retail store located in the
Bronx, New York, using an FNS number that was registered to and licensed for a different retail
store located in Brooklyn, New York.

c.     From at least in or about June 2023 through at least in or about September
2023, KEHOE knowingly used the same FNS number to submit fraudulent EBT terminal
applications for approximately eight different retail stores, located in Manhattan, Brooklyn, and
the Bronx, that were not authorized to accept SNAP benefits.

d.     In or about November 2023, OMAR ALRAWASHDEH, the defendant,

13

knowingly provided a falsified FNS license to KEHOE for the purpose of submitting fraudulent applications for EBT terminals.

      e.      In or about November 2023, KEHOE, with the assistance of OMAR ALRAWASHDEH, knowingly submitted a fraudulent application for an EBT terminal for a retail store located in the Bronx, New York, using an FNS number that was associated with a different retail store.

      f.      In or about August 2023, EMAD ALRAWASHDEH, the defendant, arranged to purchase multiple unauthorized FNS numbers from the FNS Broker and subsequently paid the FNS Broker for those misappropriated numbers.

      g.      On or about August 18, 2023, GAMAL OBAID, the defendant, transmitted to KEHOE incorporation documentation to be used in connection with a fraudulent EBT terminal application.

      h.      .On or about August 28, 2024, DAVIS took a photograph of a handwritten list of FNS numbers in Gardiner, New York.  On or about that same date, August 28, 2024, DAVIS gave those FNS numbers to the FNS Broker by texting them to the FNS Broker.  On or about September 12, 2024, the FNS Broker deposited $1000 into DAVIS's bank account from a bank in Manhattan.

(Title 18, United States Code, Section 371.)

<strong><u>COUNT TWO</u></strong><br><strong>(Theft of Government Funds)</strong>

The Grand Jury further charges:

38.      The allegations contained in paragraphs 1 through 33 of this Superseding Indictment are repeated, realleged, and incorporated as if fully set forth herein.

39.     From at least in or about June 2019 through at least in or about April 2025, in the Southern District of New York and elsewhere, MICHAEL KEHOE, MOHAMAD NAWAFLEH, OMAR ALRAWASHDEH, GAMAL OBAID, EMAD ALRAWASHDEH, and ARLASA DAVIS, the defendants, embezzled, stole, purloined, and knowingly converted to their use and the use of another, and without authority sold, conveyed, and disposed of a record, voucher, money, and thing of value of the United States and a department and agency thereof, to wit, the USDA, which exceeded the sum of $1,000, and received, concealed, and retained the same with intent to convert it to their use and gain, knowing it to have been embezzled, stolen, purloined, and converted, to wit, the defendants provided, and aided and abetted the provision of, SNAP funds to retail stores that were not authorized or permitted to receive SNAP funds.

(Title 18, United States Code, Sections 641 and 2.)

## COUNT THREE
## (Misappropriation of USDA Benefits)

The Grand Jury further charges:

40.     The allegations contained in paragraphs 1 through 33 of this Superseding Indictment are repeated, realleged, and incorporated as if fully set forth herein.

41.     From at least in or about June 2019 through at least in or about April 2025, in the Southern District of New York and elsewhere MICHAEL KEHOE, MOHAMAD NAWAFLEH, OMAR ALRAWASHDEH, GAMAL OBAID, EMAD ALRAWASHDEH, and ARLASA DAVIS, the defendants, knowingly used, transferred, acquired, altered, and possessed benefits in a manner contrary to Chapter 51 of Title 7 of the United States Code, and the regulations issued pursuant thereto, which benefits were of a value of $5,000 and more, to wit, the defendants fraudulently provided and obtained, and aided and abetted the provision and obtaining of, SNAP

15

benefits funded by the USDA, for use by retail stores that were not authorized to use or obtain SNAP funds.

(Title 7, United States Code, Section 2024(b); Title 18, United States Code, Section 2.)

## COUNT FOUR
### (Conspiracy to Commit Bribery)

The Grand Jury further charges:

42.    The allegations contained in paragraphs 1 through 33 of this Superseding Indictment are repeated, realleged, and incorporated as if fully set forth herein.

43.    From at least in or about 2022 through at least in or about March 2025, in the Southern District of New York and elsewhere, ARLASA DAVIS, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, bribery of a public official, in violation of Title 18, United States Code, Sections 201(b)(2)(B) and (C).

44.    It was a part and an object of the conspiracy that ARLASA DAVIS, the defendant, being a public official, and others known and unknown, directly and indirectly, would and did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally and for another person and entity, in return for being influenced to commit and aid in committing, and to collude in, and allow, a fraud, and make opportunity for the commission of a fraud, on the United States, and for being induced to do an act and omit to do an act in violation of DAVIS's official duty, in violation of Title 18, United States Code, Sections 201(b)(2)(B) and (C).

### Overt Acts

45.      In furtherance of the conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.      On or about August 28, 2024, DAVIS took a photograph of a handwritten list of FNS numbers in Gardiner, New York. On or about that same date, August 28, 2024, DAVIS gave those FNS numbers to the FNS Broker by texting them to the FNS Broker. On or about September 12, 2024, the FNS Broker deposited $1000 into DAVIS's bank account from a bank in Manhattan.

b.      On or about March 18, 2025, DAVIS sent a text message to the FNS Broker asking if the FNS Broker needed any more "cookies" followed shortly thereafter by a photo of a handwritten list of FNS numbers, and the FNS Broker responded by, in part, reassuring DAVIS that she would receive her "flowers" (*i.e.*, payment) soon.

(Title 18, United States Code, Section 371.)

### COUNT FIVE
### (Bribery)

The Grand Jury further charges:

46.      The allegations contained in paragraphs 1 through 33 of this Superseding Indictment are repeated, realleged, and incorporated as if fully set forth herein.

47.      From at least in or about 2022 through at least in or about March 2025, in the Southern District of New York and elsewhere, ARLASA DAVIS, the defendant, being a public official, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept something of value personally and for another person and entity, in return for being influenced to commit and aid in committing, and to collude in, and allow, a fraud, and make opportunity for the commission of a fraud, on the United States, and for being induced to do an

17

act and omit to do an act in violation of DAVIS's official duty, to wit, DAVIS accepted bribe payments from the FNS Broker in exchange for DAVIS's agreement and promise to misappropriate FNS numbers from USDA databases to which DAVIS had privileged access, which DAVIS understood would aid in the commission of a fraud on the United States and was in violation of DAVIS's official duty, and ultimately enabled unauthorized SNAP benefit transactions across multiple retail stores.

(Title 18, United States Code, Sections 201(b)(2)(B) and (C).)

## COUNT SIX
### (Conspiracy to Commit Honest Services Wire Fraud)

The Grand Jury further charges:

48.     The allegations contained in paragraphs 1 through 33 of this Superseding Indictment are repeated, realleged, and incorporated as if fully set forth herein.

49.     From at least in or about 2022 through at least in or about March 2025, in the Southern District of New York and elsewhere, ARLASA DAVIS, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit honest services wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

50.     It was a part and an object of the conspiracy that ARLASA DAVIS, the defendant, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and to deprive the public of its intangible right to DAVIS's honest services as an employee of the USDA, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit, DAVIS participated in a scheme to accept bribe

18

payments from the FNS Broker in exchange for DAVIS's agreement and promise to misappropriate FNS numbers from USDA databases to which DAVIS had privileged access, which DAVIS understood would aid in the commission of a fraud on the United States and was in violation of DAVIS's official duty, and ultimately enabled unauthorized SNAP benefit transactions across multiple retail stores, and DAVIS sent and received, and caused others to send and receive electronic communications, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Section 1349.)

### COUNT SEVEN
### (Failure to Appear)

The Grand Jury further charges:

51.     The allegations contained in paragraphs 1 through 33 of this Superseding Indictment are repeated, realleged, and incorporated as if fully set forth herein.

52.     On or about May 14, 2025, and thereafter, in the Southern District of New York, MOHAMAD NAWAFLEH, the defendant, having been released on conditions, pursuant to Title 18, United States Code, Section 3142, in connection with a charge of an offense punishable by imprisonment for a term of 15 years and more, to wit, the misappropriation of USDA benefits charged in Count Three of the initial indictment in *United States v. Kehoe, et al.*, 25 Cr. 178 (JSR), knowingly did fail to appear before a court as required by the conditions of his release, to wit, NAWAFLEH failed to appear at the United States Courthouse, 500 Pearl Street, New York, New York, as required by the conditions of his release, for a conference in the matter of *United States v. Kehoe, et al.*, 25 Cr. 178 (JSR), on or about May 14, 2025, or any time thereafter.

(Title 18, United States Code, Sections 3146(a)(1) and (b)(1)(A)(i).)

### FORFEITURE ALLEGATIONS

19

53.     As a result of committing the offenses alleged in Counts One, Two, Four, Five, and Six of this Superseding Indictment, MICHAEL KEHOE, MOHAMAD NAWAFLEH, OMAR ALRAWASHDEH, GAMAL OBAID, EMAD ALRAWASHDEH, and ARLASA DAVIS, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses, and the following specific property:

a.     All monies, assets, and funds contained in TD Bank, N.A. account number 6808368848, held in the name of MICHAEL KEHOE, and seized by the Government on or about October 4, 2024 (the "Specific Property").

54.     As a result of committing the offenses alleged in Counts One and Three of this Superseding Indictment, MICHAEL KEHOE, MOHAMAD NAWAFLEH, OMAR ALRAWASHDEH, GAMAL OBAID, EMAD ALRAWASHDEH, and ARLASA DAVIS, the defendants, shall forfeit to the United States, pursuant to Title 7, United States Code, Section 2024(f), Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, used in a transaction or attempted transaction, to commit, or to facilitate the commission of, unauthorized use, transfer, acquisition, alteration, or possession of benefits; or presentation for payment or redemption of benefits that have been illegally received, transferred, or used; or proceeds traceable to such violations; including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses, and the Specific Property.

## **Substitute Assets Provision**

20

55. If any of the above-described forfeitable property, as a result of any act or omission

of the defendants:

 a. cannot be located upon the exercise of due diligence;

 b. has been transferred or sold to, or deposited with, a third person;

 c. has been placed beyond the jurisdiction of the Court;

 d. has been substantially diminished in value; or

 e. has been commingled with other property which cannot be subdivided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and

Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the

defendants up to the value of the above forfeitable property.

> (Title 7, United States Code, Section 2024(f);
> Title 18, United States Code, Section 981;
> Title 21, United States Code, Section 853; and
> Title 28, United States Code, Section 2461.)

_____
EPERSON

JAY CLAYTON
United States Attorney

21